**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:05cv275**

| | |
|---|---|
| LOWE'S COMPANIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| PACIFIC RESEARCH GROUP, INC., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the court upon plaintiff's (hereinafter "Lowe's") Motion to Dismiss Counterclaim (#16). On June 8, 2006, defendant (hereinafter "Pacific") timely filed its response to Lowe's motion (#19), and on June 21, 2006, Lowe's timely filed its reply (#21). Having carefully considered Lowe's Motion to Dismiss Counterclaim and reviewed the pleadings, the court enters the following findings, conclusions, and Recommendation.

**FINDINGS AND CONCLUSIONS**

**I.     Background**

In this action, Lowe's seeks a declaratory judgment from this court that it did not breach a contract with defendant and that defendant is in breach of such contract. According to the allegations of the Amended Complaint, the contract involved the defendant contracting with the plaintiff to perform a periodic Comprehensive Customer Survey requiring the conducting by Pacific of 22,500 surveys of Lowe's customers in 750 stores by November 8, 2005. Amended Complaint ("A.C."), at ¶¶ 7&9. In return, Lowe's states that it was obligated to pay Pacific $28.50 for each completed survey. Id., at ¶ 11. Of the 22,500 surveys required to be conducted by November 8, 2005, Lowe's contends that Pacific only

1

completed 1,855 unique and valid surveys by October 31, 2005.  Lowe's Brief in Support, at 2.  It is Pacific's contention that Lowe's frustrated their completion of the survey by creating a too lengthy questionnaire and through other alleged breaches.  See Answer.

In response to the Amended Complaint, Pacific filed its Answer and asserted in its Counterclaim a claim sounding in fraud and misrepresentation.  Pacific's tort claim appears to be based on alleged oral representations of employees of Lowe's that Pacific would be paid the contract price of $641,250.00 in three equal installments of $213,750.00, with the first installment due on or around September 19, 2005.  Counterclaim, at ¶¶ 63 & 64.[1] Pacific contends that these were "false representations or the concealment of material fact necessary to cause PRG to perform under the contract." Id., at ¶ 75.  Pacific alleges such representations were reasonably calculated to deceive and did deceive Pacific, id., at 76, and were intended to deceive and in fact deceived Pacific. Id., at ¶ 77.  Further, Pacific alleges that it justifiably relied on such alleged misrepresentations.  Id., at ¶ 78.  Pacific seeks compensatory as well as punitive damages based on such alleged fraud.

Lowe's has moved to dismiss the claim of fraud under Rule 12(b)(6), Federal Rules of Civil Procedure, arguing that Pacific has failed to allege a cognizable claim in tort because such counterclaim in fraud is not based on any duty independent of the parties' contractual relationship and such claim is barred by the "economic loss rule."

The undersigned respectfully notes that the contract at issue in this case was not annexed to the Amended Complaint or to the Answer and Counterclaim. The plaintiff's complaint references a "Statement of Work."  The defendant's brief states "There does not

---

[1] These factual allegations appear to have not been realleged and incorporated into the Second Claim for Relief in what appears to be a pleading error.  The undersigned has, however, considered such factual allegations as if they had been realleged in such claim.

**2**

appear to be a formal, detailed written contract signed by the parties."

## II. Rule 12(b)(6) Standard

Where a counterdefendant contends that a counterplaintiff has failed to state a cognizable counterclaim, Rule 12(b)(6) authorizes dismissal based on a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1832 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). As the Court discussed in Neitzke:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts . . . a claim must be dismissed, without regard to whether it is based on outlandish legal theory . . . . What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

Id., at 1832 (citation omitted). Dismissal of a complaint is proper under Rule 12(b)(6) where it is clear that no set of facts consistent with the allegations in the counterclaim could support the asserted claim for relief. Taubman Realty Group LLP v. Mineta, 320 F. 3d 475, 479 (4th Cir. 2003); Migdal v. Rowe Price-Fleming Intl Inc., 248 F. 3d 321, 325-36 (4th Cir. 2001).

While the court accepts factual allegations in the counterclaim as true and considers the facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

> The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion. And although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. This requirement serves to prevent costly discovery on claims with

no underlying factual or legal basis.

Migdal, at 326 (citations and internal quotations omitted). In addition, a court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Venev v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted). For the limited purpose of ruling on Lowe's motion, the court has accepted as true the facts alleged by defendant in the counterclaim and will view them in a light most favorable to defendant.

## III. Discussion

### A. The Requirement of Alleging a Duty Independent of the Contract

Inasmuch as this action is based on diversity jurisdiction, this court is bound to follow the substantive law of the State of North Carolina. Erie R. Co. v. Tompkins, 304 U.S. 64 (1938). North Carolina law is most particular when a party to a contract seeks an extra-contractual remedy sounding in the field of tort. The applicable North Carolina law has been recently summarized in this district, as follows:

> In order to state a viable claim in tort for conduct that is alleged to breach a contract, "a plaintiff must allege a duty owed him by the defendant separate and distinct from any duty owed under a contract." *Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc.*, 994 F.Supp. 350, 362 (W.D.N.C.1997). This "independent duty" exception has been "carefully circumscribed by state law." *Strum v. Exxon Co., USA*, 15 F.3d 327, 331 (4th Cir.1994). The independent tort must be identifiable and "the tortious conduct must have an aggravating element such as malice or recklessness." *Id.*

US LEC Communications, Inc. v. Qwest Communications Corp., 2006 WL 1367383, *2 (W.D.N.C. 2006).[2]

The undersigned has read all of the allegations of the Answer and Counterclaim, and has considered relevant allegations to have been realleged in Pacific's counterclaim for fraud

---

[2] Due to the limits of electronic filing, a copy of such unpublished decision of this court is placed in the file by reference to the Westlaw citation.

**4**

and misrepresentation. In reviewing paragraphs 71 through 78 of the counterclaim, it is readily apparent that the premise of Pacific's fraud claim is alleged representations made by employees of Lowe's that Pacific would be paid in installments (rather than per survey), and that such alleged false representation fraudulently induced them to "perform under the contract." Counterclaim, at ¶ 75. Pacific also referenced in paragraphs 71-74 of the Counterclaim the "speech, conduct and actions" of two employees of Lowe's without asserting what speech of such employees is actionable. Earlier, in the general factual allegations of the Counterclaims, Pacific also alleged that those employees reduced the number of surveys to be conducted under the contract by nearly a third, forcing Pacific to do fewer surveys at a per-piece price which was quoted for doing a larger number of surveys, Counterclaim, at ¶ 11, which the court interprets to be an allegation that Pacific lost not only gross revenue, but economy of scale. Having considered such allegations, the undersigned cannot find that Pacific is contending that reducing the number of surveys amounted to fraud. Not only were such alleged acts not specifically pled, Fed.R.Civ.P. 9(b), they cannot form the basis for fraud inasmuch as Pacific concludes such general allegation of fact with the statement that "PRG reluctantly agreed to this significant change." Id. Instead, the counterclaim for fraud appears to be limited to the alleged representations concerning the manner of payment as specified in paragraphs 75 through 78 of the Counterclaim.

In applying North Carolina law to the Counterclaim for Fraud and Misrepresentation, it is Pacific's obligation to "allege a duty owed him by the defendant separate and distinct from any duty owed under a contract." US LEC Communications, Inc., supra (internal citation and corresponding quotation marks omitted). Review of paragraphs 71 through 81 of the Counterclaim reveals that Pacific has failed to even use the word "duty," much less allege an duty which Lowe's owed it which is separate and distinct from any duty owed

under the contract. In any event, an alleged misrepresentation as to the "manner of payment" does not appear to be the type of event that is capable of being separated from the contractual process. And in reality, Pacific has been unable to separate this alleged misrepresentation from its own Counterclaim for breach of contract inasmuch as it has alleged that Lowe's "promised to pay the first installment . . . not later than October 5, 2005," Counterclaim, at ¶ 63, and that Lowe's "materially breached its agreement in failing to pay the agreed upon price . . . and in failing to timely pay . . . installments." Id., at ¶ 65. Unlike cases which have found an independent duty that would support a claim of fraud, Pacific has failed to allege that Lowe's engaged in any pre-contractual scheme or plan where it intended to defraud Pacific even before it contracted with Pacific and which continued through the execution of the contract. See Wilson v.Mcaleer, 368 F.Supp.2d 472 (M.D.N.C. 2005).

Instead, it would appear that Pacific's claim concerning the method of payment, which is undeniably a material contract term, is a dispute which cannot have a life independent of the bargaining process. This is no different than what the district court found in US LEC Communications, Inc., supra, which concluded, as follows:

> As much as Qwest attempts to characterize its allegations as tort claims, a review of Defendant's Amended Counterclaim reveals that Qwest's fraud and negligent misrepresentation claims are premised on the same facts as its breach of contract claims, namely that Plaintiffs violated their tariffs in charging Qwest for wireless-originated toll free calls. There are no allegations in the Counterclaim of a separate and independent duty owed by Plaintiffs outside of any contractual relationship. Moreover, the court notes that the Counterclaim fails to allege that Plaintiffs had the capacity or the obligation either under or outside of a contract to present charges of a particular nature differently than it did for any other charges. Nor does Qwest allege that the manner in which Plaintiffs assessed those charges was in any way done with the requisite "malice or recklessness" sufficient to convert these claims into tort claims. Accordingly, Defendant's fraud and negligent misrepresentation claims are hereby dismissed.

Id., at *2. Finding that Pacific has failed to allege any extra-contractual duty that could support a claim for fraud and misrepresentation, the undersigned must respectfully

**6**

recommend that the district court grant Lowe's Motion to Dismiss Pacific's Second Counterclaim.[3]

**RECOMMENDATION**

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that plaintiff's Motion to Dismiss Counterclaim (#16) be **ALLOWED,** and that Pacific's Second Counterclaims be **DISMISSED WITH PREJUDICE** for failure to state a claim under prevailing North Carolina law.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

---

[3] As did the district court in US LEC Communications, Inc., the undersigned declines to address Lowe's Motion to Dismiss based on the "economic loss doctrine," inasmuch as it appears that no claim has been stated. Id., at FN1. The undersigned, respectfully, disagrees with Pacific's argument concerning the weight to be afforded opinions of the North Carolina Business Court, but instead finds the opinions of that court to be highly persuasive on issues of North Carolina business law, which would include limitations on damages in contract actions between merchants and service providers.

Signed: July 25, 2006

*Dennis L. Howell*

Dennis L. Howell
United States Magistrate Judge